Volk and others, Appellants, vs. Stowell, Respondent.

*January 12 — February 8, 1898.*

*Executors and administrators: Right to realty: Contracts: Death of one party: Agency coupled with an interest.*

1. An administrator cannot maintain an action for the recovery of his decedent's real estate, unless it is shown that it is needed for the payment of debts or legacies.

2. Defendant and plaintiffs' testator entered into a contract providing that the defendant should manage the testator's farm for a term of five years; that he should receive therefor $30 per month, and in addition fifteen per cent. of the farm products and increase of stock, and should be allowed the use of certain buildings and a garden; that the testator might declare the contract forfeited only in case of failure or neglect of the defendant to perform it according to its true intent and meaning; and that upon the death of the defendant the contract should be determined and any wages due him should be paid to his heirs or legal representatives by the testator or "his heirs, representatives, or assigns, upon whom this contract shall be binding." By his will, made soon after, the testator bequeathed the revenues, benefits, and profits arising from said farm to his grandchildren, each to be paid his proper share thereof after attaining his majority, until which time said proceeds were to be paid to the testator's children. *Held*, that the contract vested in the defendant an agency or authority, coupled with an interest, which survived the testator and became binding on his heirs and personal representatives, and entitled the defendant to continue to manage the farm as stipulated in the contract.

APPEAL from a judgment of the circuit court for Polk county: A. J. VINJE, Circuit Judge. *Affirmed.*

This was an action for the recovery of certain real estate, called the "Hermitage Farm," situated on the north shore of Poplar lake, in Polk county, of which Leonard W. Volk died seised August 19, 1895, having made on the 1st of April, 1895, a written agreement with the defendant, *Stowell,* by which it was agreed that the latter should take charge of the management, care, and cultivation of said farm, or any additional adjoining land that might be thereafter purchased by said Volk, for a term of five years from that date, subject to extension, as the parties might mutually agree. The defendant was to devote his entire time and best effort to the management, care, and cultivation of said farm, and to faithfully and diligently serve the exclusive interests of the said Volk therein, for the designated period. Volk agreed to pay the defendant therefor a monthly salary of $30, pay-

'able at the end of each month, and to furnish him a hired
man or strong boy of about eighteen years of age, and dur-
ing harvest time, if necessary, to furnish an extra man or
boy. Besides the monthly salary or wages to be paid said
*Stowell*, said Volk was to allow him additional fifteen per
cent. of all increase of stock (quadrupeds and bipeds) born
or hatched on the said farm; also fifteen per cent. of all
products of the soil, field, and garden.

Among other things, it was agreed that any stock might
be sold from time to time or increased according to the
wishes or direction or option of Volk. The defendant was
"to have the use of the farm house, fuel, and private garden
free." The "Lodge," so called, on the premises, was exclu-
sively for the use of Volk, as well as the log house at east
end of farm, with a small garden and granary. All original
stock was to be kept good according to schedule, if the sixty
acres, more or less, produced food sufficient to feed them
through the winter. It was agreed that at the end of every
six months the monthly percentage might be increased or
reduced, according to the yield of stock and products of the
soil, as might be mutually agreed upon between said Volk
and the defendant. "In case of failure or neglect of the
defendant to perform the covenants and agreements on his
part, . . . the contract should, at the option of said
Volk, become forfeited and determined;" and, in such event,
the defendant agreed "to immediately surrender up the
premises to said Volk." In case of the death of the defend-
ant before the expiration of the contract, the same should
terminate, and any wages or percentages due to him at that
time were to be paid to his heirs or legal representatives
"by said Volk, or his heirs or representatives or assigns,
upon whom this contract shall be binding."

By the last will and testament of said Volk, which has
been duly admitted to probate, he devised the premises in
question to his grandchildren then living, the issue of his son

*Stephen A. Douglas Volk* and his wife, Marion Laribee Volk, and to his grandchildren then living, the issue of his daughter *Elizabeth Honora* and her husband, William B. Colt, naming them, or any other grandchildren who might thereafter be born; that is to say, as each of said grandchildren should reach the lawful age, he or she should be entitled to their proportion of the revenues, profits, and benefits of whatsoever kind of said farm, to be divided by the probate judge of said Polk county, or such trustee as he might appoint, as the guardian and trustee or executor. Their parents, during the minority of the grandchildren, were to be entitled to all revenues, divided equitably, etc.

The parents of the grandchildren mentioned in the will, *Stephen A. Douglas Volk* and *Nora Volk Colt*, are children of the testator, and they brought this action for the recovery of the premises in question, charging the defendant with unlawfully withholding the same. The answer was a general denial. *H. P. Burdick*, administrator of the estate of said Leonard W. Volk with his will annexed, was subsequently joined as a party plaintiff.

Upon trial by the court, the facts were found as stated, and that the defendant had occupied the premises under and by virtue of said contract from its date, and still occupied the same, and that said Leonard W. Volk lived upon the same after the contract was made to the time of his death. The circuit court held that the defendant was entitled to the possession and occupancy of the farm house on the premises, and such possession as would enable him to take charge of the management, care, and cultivation of the farm according to the terms of the contract; and that the plaintiffs were not entitled to the exclusive possession of the premises; and gave judgment dismissing the action, from which the plaintiffs appealed.

The cause was submitted for the appellants on the brief of *H. P. Burdick*, and for the respondent on that of *Frank B. Dorothy*.

PINNEY, J.　1. There is neither allegation nor proof to show that the rents and profits of the real estate in question were needed for the payment of debts of the testator or in the settlement of his estate, or that he left debts unpaid or not provided for.　At common law, the executor or administrator had nothing to do with the real estate of which the testator or intestate died seised.　*Jones v. Billstein*, 28 Wis. 221.　When there are no debts or legacies to be paid, there is no valid reason why the executor or administrator should have the possession of the real estate.　*Flood v. Pilgrim*, 32 Wis. 376; *Filbey v. Carrier*, 45 Wis. 469; *McManany v. Sheridan*, 81 Wis. 542.　The burden of proving that there were debts of the testator to be paid was on the plaintiff *Burdick*, seeking a recovery of the premises as administrator of the estate of the deceased with his will annexed.　It appears from the will itself that no legacies were given by it, and it seems clear that no recovery in the action could be had by the administrator, *Burdick*.

2. Whether there could be a recovery by the plaintiffs *S. A. Douglas Volk* and *Nora Volk Colt*, children of the testator and parents of his grandchildren named in the will, and to whom the revenues, profits, and benefits of the farm were devised until each such grandchild should reach the lawful age, when he or they should be entitled to their proportion of such revenues, profits, and benefits, is a question depending upon the legal effect of the contract made by the defendant with the testator, April 1, 1895, in view of the subsequent death of Leonard W. Volk.　The contention on the part of the plaintiff is that the contract is, in effect, a contract between master and servant, upon a specified compensation to the latter, which would be terminated upon the death of either party, upon the ground that, " in contracts in which the performance depends upon the continued existence of a given person or thing, a condition is implied that the impossibility of performance arising from the per-

Volk and others vs. Stowell.

ishing of the person or thing shall excuse the performance, because, from the nature of the contract, it is apparent that the parties contracted on the basis of the continued existence of the particular person or thing." The death of one contracting party does not operate as a release or discharge from the performance of his part of the agreement, where it is of such a character that it may be performed by his personal representatives. *Hawkins v. Ball's Adm'r,* 18 B. Mon. 816, 68 Am. Dec. 755. Where the agreement is for services which involve the peculiar skill of an expert by whom alone the particular work in contemplation of the parties can be performed, and where distinctly personal considerations are at the foundation of the contract, the relation of the parties is dissolved by the death of him whose personal qualities constituted the particular inducement to the contract. If a party agrees to do that which does not necessarily require him to perform in person,— that which he may, by assignment of his contract or otherwise, employ others to do,— it may be fairly inferred, unless otherwise expressed, that a mere personal relation was not contemplated. *Billings' Appeal,* 106 Pa. St. 558. It is a presumption of law that the parties to a contract bind, not only themselves, but their personal representatives; and executors, therefore, whether named in the contract or not, are liable on the contracts of the testator which are broken in his lifetime, and, with the exception of contracts in which personal skill or taste is required, on all such as are broken after his death. Chitty, Cont. (13th ed.), 130; *Siboni v. Kirkman,* 1 Mees. & W. 418. An ordinary contract of lease is not such a personal contract as is extinguished by the death of the lessor or lessee. *Lockart v. Forsythe,* 49 Mo. App. 654. The executors or administrators are in truth contained in the person of the testator or intestate, except in the case of a *personal* contract,— that is, a contract depending on personal skill,— in which is always implied the

condition that the person is not prevented by the act of God from completing the work. In *Wills v. Murray*, 4 Exch. 865, PARKE, B., said: "No proposition is clearer than that, as a general rule, the executor represents the person of his testator with respect to all his rights and liabilities on all his contracts." The executors of every person are implied in himself and bound without naming them. The same rule applies to administrators. *Hyde v. Skinner*, 2 P. Wms. 196, 197. His personal representatives continue to be bound so far as the means to complete such contracts have come to their hands.

The contract under consideration is a peculiar one, and somewhat in the nature of a lease. It conferred on the defendant many of the rights of a tenant under such an instrument. Manifestly, it gave the defendant, during the period specified in the contract, an interest in the possession and use of the farm. It gave him authority to manage, care for, and cultivate it, and to diligently serve the exclusive interests of Volk therein for the period specified, to the end that he might become entitled to the percentages stipulated of stock and products of the soil, which were to be derived and arise out of the land by the cultivation of the farm and performance of the contract, and it would seem reasonably clear that the devisees of Volk took the premises subject to the rights of the defendant in these respects. He was to have during the stipulated period the use of the farm house, fuel, and private garden free, Volk retaining the option to declare the contract forfeited and determined only in case of failure or neglect of the defendant to perform the covenants and agreements contained in it on his part according to their true intent and meaning, in which event he was to immediately surrender up the premises to said Volk.

It is a question of intention of the parties, as derived from the provisions of the contract and the subject to which it relates, as to whether it was to continue in force after the death of Volk; and upon this question the provision of the

testator's will, made within about two weeks after the contract, is quite significant as to the intention of Volk, providing for a division of the "revenues, profits, and benefits of whatsoever kind of said farm, by the probate judge of said Polk county, or such trustee as he may appoint, as the guardian and trustee or executor," taken in connection with the provision that the plaintiffs, the parents of the grandchildren mentioned in the will, during their minority, were to be entitled to all revenues, divided equitably according to said trustee's decision. Evidently Volk did not intend that his death should operate to extinguish the contract, but that its provisions should remain in full force, and be executed by and between the defendant and Volk's personal representatives.

The contract clearly vested in the defendant an agency or authority, coupled with an interest in the subject matter of the business to which it related. So far as the stipulations on the part of Volk are concerned, no legal obstacle is perceived to their being performed by his personal representatives. The stipulated percentages of all increase of stock raised on the farm, and fifteen per cent. of all products of the said soil, field, and garden, were matters in respect to which he might transfer an interest to the defendant. They were possibilities coupled with his existing interest in and ownership of the farm and stock thereon, and which might result from the performance of the contract. The right of the defendant to such percentages and the occupancy of the farm and farm house in order that such percentages and profits might be realized, was clearly vested in the defendant, and survived after the death of Volk, to be enforced, if need be, against his personal representatives.

We think that the implication necessarily arises from the stipulation in the contract that it should be determined upon the death of the defendant and that any wages or percentages then due him should be paid to his heirs or legal representatives by said Volk, or his heirs, representatives, or

assigns, *upon whom this contract shall be binding,* that its
provisions would continue in force notwithstanding the
death of Volk. So, also, the option of Volk to declare the
contract forfeited in case of failure or neglect on the part
of the defendant to perform the covenants and agreements
contained in the contract on his part according to their
true intent and meaning, in which event the defendant was
to immediately surrender up the premises to said Volk, raises
a clear implication that, in case of faithful performance of
the provisions of the contract on the part of the defendant,
his rights in the premises would continue during the stipu-
lated term.

From the construction and effect thus given to the pro-
visions of the contract it necessarily results that the defend-
ant, after the death of the testator, continued to be entitled
to the management, care, and cultivation of the farm, and
to render services thereon in its care and cultivation, as stipu-
lated in the contract. It follows that the plaintiffs were not
entitled to the exclusive possession of said premises, or to re-
cover them before the expiration of said term, as against the
defendant, and the judgment of the circuit court dismissing
the action must for these reasons be affirmed.

*By the Court.*— The judgment of the circuit court for Polk
county is affirmed.