ROWE, Executrix, Appellant, vs. COMPENSATION RESEARCH BUREAU, INC., and another, Respondents.*

*January 4—February 2, 1954.*

* Motion for rehearing denied, without costs, on April 6, 1954.

592

For the appellant there was a brief and oral argument by *Irving A. Puchner* of Milwaukee.

For the respondents there was a brief by *Lines, Spooner & Quarles,* attorneys, and *Charles B. Quarles* of counsel, all of Milwaukee, and oral argument by *Charles B. Quarles.*

STEINLE, J.   Had Louis Behr lived until Rowe's death and had Behr given a notice to Rowe terminating payment of the 15 per cent participation of commissions, then, clearly, Rowe's estate under the terms of the contract between Behr and Rowe would have been entitled to any unpaid amount of division of commissions due Rowe.

However, when Behr died, the insurance companies which he had represented in transactions with the trustees of the retirement plan, in order to continue to sell policies to the trustees, were obliged to deal with the trustees through other agency representation.   Since at no time was there obligation on the part of the trustees to purchase policies from Behr, it follows, that after his death, there could have been no duty

on their part to procure policies from his personal representatives, even though such representatives may have been authorized to underwrite insurance for the same companies that Behr represented. There is no evidence here that such personal representatives were so authorized or that the trustees dealt with personal representatives of Behr in such manner.

Appellant claims that the Louis Behr Organization succeeded to the obligation of Behr in his contract with Rowe. That organization was not the personal representative of Behr nor is there any showing that it became bound to continue the obligation of Behr to Rowe.

Appellant also contends that since the partnership, Compensation Research Bureau, was a party to the contract between Behr and Rowe, therefore, the successors of that firm, to wit, Seefurth and McGiveran and Compensation Research Bureau, Inc., had become liable for the payment of the commissions after Behr's death and until Rowe's death.

However, neither the partnership, Compensation Research Bureau, nor its successors, Seefurth and McGiveran and Compensation Research Bureau, Inc., were licensed as insurance underwriters during the pendency of the Behr-Rowe contract up to the time of Behr's death (excepting that Seefurth and McGiveran became so licensed in 1945). In order to obtain their split of the commissions they were as dependent upon Behr's authority to represent insurance companies and his ability to sell policies to the trustees of the plan as was Rowe. If there had been privity of contract between Rowe and Compensation Research Bureau or its successors, the same terminated upon Behr's death. The rights of Compensation Research Bureau and its successors, to a portion of Behr's commission, also terminated with Behr's death. Rowe was not entitled as a matter of law under his contract to a share of commissions on policies written by a new agency and sold to the trustees of the plan after Behr's death regardless of

any arrangement that the new agency made with Seefurth and McGiveran or Compensation Research Bureau, Inc.

We are obliged to hold that under the facts and circumstances here, the contract between Behr and Rowe was purely personal in its nature. In *Volk v. Stowell* (1898), 98 Wis. 385, 390, 74 N. W. 118, the court held that:

"Where the agreement is for services which involve the peculiar skill of an expert by whom alone the particular work in contemplation of the parties can be performed, and where distinctly personal considerations are at the foundation of the contract, the relation of the parties is dissolved by the death of him whose personal qualities constituted the particular inducement to the contract."

In 12 Am. Jur., Contracts, p. 951, sec. 375, it is said that:

". . . executory contracts terminate upon the death of a party whose peculiar skill . . . makes his life essential to the completion of such contract."

It seems to us that Rowe's rights to a portion of the commissions depended entirely on Behr's authority to underwrite the policies and his special skill and ability to sell insurance policies to the trustees of the retirement plan. Upon Behr's death his authority, skill, and ability to sell insurance became ended.

The test for determining whether a particular contract is discharged by death seems to be whether it is of such character that it may be performed by the promissor's personal representative. 12 Am. Jur., Contracts, p. 950, sec. 375. In this case it has not been shown that the personal representative of Behr either had the authority or the ability to perform the contract with Rowe after Behr's death. It has not been established that the Louis Behr Organization or any of the respondents here are personal representatives of Louis Behr.

For the reason that we are obliged to determine that George F. Rowe no longer became entitled to commissions under the contract when Louis Behr died and that, hence, the executrix of his estate has no valid cause of action for commissions under the contract for the period subsequent to Behr's death, we find no necessity for determining the other issues raised by this appeal.

*By the Court.*—Judgment affirmed.